# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70003

QUINTIN PHILLIPPE JONES,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:05-CV-638

Before HIGGINBOTHAM, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:*

      Quintin Phillippe Jones was convicted by a Texas jury of capital murder and sentenced to death. After a direct appeal and collateral review in state court, he petitioned a federal district court for a writ of habeas corpus, challenging the constitutionality of his confinement and sentence. The district

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70003

court denied relief. Jones now seeks a certificate of appealability (COA) to appeal. We will GRANT a COA in part.

## I.

Jones beat his eighty-three-year-old great aunt to death with a baseball bat.[1] Fort Worth police arrested him the next day for outstanding traffic warrants and for possession of a controlled substance, and interviewed him about the murder.[2] The following day, Jones gave a written statement after waiving his *Miranda* rights in which he stated that he had an alter ego named James who lived in his head and was responsible for the murder.[3] Several days later, Jones confessed in detail to two additional murders.[4]

Jones was convicted by a Texas jury of capital murder and sentenced to die.[5] The Texas Court of Criminal Appeals affirmed his conviction and sentence.[6] The United States Supreme Court denied certiorari.[7] Jones then filed a state petition for habeas corpus, which the Texas Court of Criminal Appeals denied.[8]

Jones filed a federal petition for habeas corpus in the Northern District of Texas.[9] His petition was dismissed as time-barred.[10] The district court appointed new counsel and vacated its dismissal to give Jones a chance to respond.[11] After his response, his petition was again dismissed as time-

---

[1] *Jones v. State*, 119 S.W.3d 766, 770-71 (Tex. Crim. App. 2003).

[2] *Id.* at 771.

[3] *Id.*

[4] *Id.* at 771-72. Jones was never charged with these two additional murders, but evidence of them was admitted as relevant to his punishment. *Id.*

[5] *Id.* at 770.

[6] *Id.*

[7] *Jones v. Texas*, 542 U.S. 905 (2004).

[8] *Ex parte Jones*, No. WR-57299-01, 2005 WL 2220030 (Tex. Crim. App. Sept. 14, 2005) (unpublished).

[9] ROA.84-119.

[10] ROA.763-69.

[11] ROA.891-900; Respondent's Br. 14-15 (ECF 71, 20-21).

barred.[12] Jones appealed, and we vacated and remanded for reconsideration in light of the principles of equitable tolling announced in the Supreme Court's then-recent decision *Holland v. Florida*.[13] On remand, the district court found that no grounds existed for equitable tolling and once again dismissed Jones's federal habeas petition as time-barred.[14] Then on Jones's motion to alter judgment, the district court reversed course, persuaded that equitable tolling relieved Jones's petition from the AEDPA limitations bar.[15] It granted leave to file an amended petition for federal habeas with additional briefing by both parties.[16]

Finally, in January of 2016, the district court issued the relevant memorandum and opinion denying each of Jones's six claims for relief in the amended petition[17] and denying a COA on all claims.[18] Jones seeks a COA on two out of the six denied claims: claim 1a for ineffective assistance of trial counsel and claim 5 for violation of his *Miranda* rights.

## II.

"This court may issue a COA only if the applicant has 'made a substantial showing of the denial of a constitutional right.' . . . To make a substantial showing, a petitioner must show that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement

---

[12] ROA.1223-34; Respondent's Br. 15 (ECF 71, 21).

[13] *Jones v. Thaler*, 383 F. App'x 380 (5th Cir. 2010) (unpublished) (referencing 560 U.S. 631 (2010)); Respondent's Br. 15 (ECF 71, 21).

[14] ROA.1574-1601; Respondent's Br. 15 (ECF 71, 21).

[15] ROA.1671-84; Respondent's Br. 16 (ECF 71, 22).

[16] Respondent's Br. 16 (ECF 71, 22). [The state's opposition erroneously describes Jones's amended petition as being filed in "June 2004;" it was in fact filed June 2014, and can be found at ROA.1951-2069.]

[17] Respondent's Br. 16 (ECF 71, 22); ROA.2424-2521.

[18] ROA.2520.

to proceed further.'"[19] Although a petitioner seeking a COA must demonstrate "'something more than the absence of frivolity' or the existence of mere 'good faith,'"[20] our analysis of a COA application entails only a "limit[ed]," "threshold inquiry,"[21] and "[w]here the petitioner faces the death penalty, 'any doubts as to whether a COA should issue must be resolved' in the petitioner's favor.'"[22] When the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[23]

> Under 28 U.S.C. § 2254(d),
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

We "review pure questions of law under the 'contrary to' standard of sub-section (d)(1), mixed questions of law and fact under the 'unreasonable

---

[19] *Allen v. Stephens*, 805 F.3d 617, 624-25 (5th Cir. 2015) (quoting 28 U.S.C. § 2253(c)(2) and *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)).

[20] *Miller–El*, 537 U.S. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

[21] *Id.* at 327

[22] *Allen*, 805 F.3d at 625 (quoting *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004)).

[23] *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

application' standard of sub-section (d)(1), and pure questions of fact under the 'unreasonable determination of facts' standard of sub-section (d)(2)."[24]

## III.

Claim 1 of Jones's federal habeas petition, on which the instant claim 1a was based, was the denial of Jones's Sixth Amendment right to counsel at critical stages of his prosecution.[25] The district court denied that claim,[26] and Jones does not challenge that determination. An additional, unnumbered claim came with the heading of claim 1: that Jones's trial counsel was ineffective for failing to object to this denial of Jones's Sixth Amendment right to counsel[27]— a claim raised for the first time in Jones's amended federal habeas petition. The district court styled this claim "claim 1a" and denied it, ruling it procedurally as unexhausted in state court and lacking merit.[28] Jones seeks a COA on claim 1a.

Admitting that claim 1a is procedurally defaulted for failing to raise it to the Texas state habeas court,[29] Jones rests on the exception to procedural default announced in *Martinez v. Ryan*[30] and applied to Texas procedural defaults in *Trevino v. Thaler*.[31] In *Martinez*, the Court held

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a

---

[24] *Simmons v. Epps*, 654 F.3d 526, 534 (5th Cir. 2011) (quoting *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000)).

[25] ROA.1996.

[26] ROA.2451.

[27] ROA.2001.

[28] ROA.2452-55.

[29] Petitioner's Br. 27-28 (ECF 38, 38-39) (Jones argues for application of the *Martinez/Trevino* procedural default exception, thereby implicitly admitting that the claim is procedurally defaulted); Respondent's Br. 34-36 (ECF 71, 40-42); *Williams v. Thaler*, 602 F.3d 291, 305 (5th Cir. 2010) ("Procedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." (quoting *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004)).

[30] 132 S. Ct. 1309 (2012).

[31] 133 S. Ct. 1911 (2013).

procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.[32]

Subsequently, in *Trevino*, the Court applied its holding in *Martinez* to Texas prisoners' federal habeas petitions.[33]

The district court ruled that the *Martinez/Trevino* exception was not available because Jones's ineffective assistance of trial counsel claim was not "substantial,"[34] concluding that the underlying Sixth Amendment claim was without merit.[35]

We find that reasonable jurists could not debate the correctness of the district court's procedural ruling. The ineffective assistance of counsel claim that Jones seeks to have excused from procedural default is not substantial. It rests on the premise that Jones's trial counsel should have objected to Texas's failure to timely appoint counsel to Jones to assist him with critical stages of his prosecution.[36] However, Jones's Sixth Amendment right to counsel had not yet attached in connection with the capital murder charge at the time that he complains about.

On September 11, 1999, the day after Jones murdered his great aunt, he was arrested for outstanding traffic citations and possession of a controlled substance.[37] Jones argues that this arrest was merely a pretext to question

---

[32] *Martinez*, 132 S. Ct. at 1320.

[33] *Trevino*, 133 S. Ct. at 1921.

[34] ROA.2455; *see Martinez*, 132 S. Ct. at 1318 ("To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.").

[35] ROA.2455.

[36] Petitioner's Br. 27 (ECF 38, 38).

[37] Petitioner's Br. 12 (ECF 38, 23).

him about the murder.[38] And indeed, Jones was questioned by a Fort Worth detective that night about the murder.[39] The following day, on September 12, Jones was arraigned for possession of a controlled substance.[40] The next day, on September 13, Fort Worth police collected a blood sample from Jones that implicated him in the murder and conducted another interview, during which Jones confessed to the murder of his great aunt.[41] Later that night, Jones was arraigned for capital murder.[42] A few weeks later, on September 22, while Jones remained incarcerated for the murder of his great aunt, Texas Rangers learned of evidence implicating Jones in two additional, unrelated murders, so they questioned him about those.[43] Jones confessed to the two additional murders.[44] On October 5, Jones requested and was appointed counsel.[45]

Jones's trial counsel did not assert an objection under the Sixth Amendment.[46] Jones asserted to the district court in his amended petition for habeas corpus, for the first time in any court, that his trial counsel was ineffective for failing to do so. He does not argue that the taking of a blood sample was a "critical stage" of his prosecution necessitating representation.[47] Instead, he focuses on two interrogations—the September 13 interrogation by a Fort Worth detective concerning the eventually charged murder, and the September 22 interrogation by Texas Rangers concerning the two uncharged murders—arguing that they were "critical stages" of his prosecution during

---

[38] Petitioner's Br. 12-13 (ECF 38, 23-24).

[39] Respondent's Br. 30 (ECF 71, 36).

[40] Petitioner's Br. 13 (ECF 38, 24).

[41] Petitioner's Br. 13-15 (ECF 38, 24-26).

[42] Petitioner's Br. 15 (ECF 38, 26).

[43] Petitioner's Br. 17 (ECF 38, 28).

[44] Petitioner's Br. 17 (ECF 38, 28).

[45] Petitioner's Br. 18 (ECF 38, 29).

[46] Respondent's Br. 33 (ECF 71, 39). His counsel did pursue objections under the Fourth and Fifth Amendments. Respondent's Br. 33 n.7 (ECF 71, 39).

[47] *See United States v. Wade*, 388 U.S. 218, 227 (1967) (the taking of a blood sample is not a critical stage that triggers the Sixth Amendment right to counsel).

which he was entitled to counsel. Jones is correct that interrogations by the state are "critical stages" within the meaning of the Supreme Court's Sixth Amendment jurisprudence.[48] Jones claims that he was entitled to counsel under the Sixth Amendment during those two interrogations, and therefore that his trial counsel were ineffective for failing to raise the issue.

The flaw in Jones's position is that his Sixth Amendment right to counsel had not yet attached in connection with the crimes that those interrogations concerned at the times they occurred. "[A] person's Sixth [] Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him"—specifically "at the time of arraignment" or "at the time of a preliminary hearing."[49] And this Sixth Amendment right "is offense specific."[50] At the time that a Fort Worth detective questioned Jones about the murder of his great aunt, Jones had not yet been charged with or arraigned for that murder, so his Sixth Amendment right to counsel in connection with that murder charge had not yet attached. Further, at the time that Texas Rangers questioned Jones about the two unrelated murders, Jones had not been charged with or arraigned for those murders (and indeed he never was).

Essentially acknowledging this flaw, Jones argues that his Sixth Amendment right to counsel in connection with *the capital murder charge* actually attached the day before the interview with Fort Worth police, at his arraignment for *possession of a controlled substance*. He characterizes his drug arrest as "pretext" for police to question him about the murder, and reasons that he therefore should have been provided with counsel during the interrogation that occurred prior to his murder arraignment notwithstanding

---

[48] *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

[49] *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972).

[50] *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

that no right to counsel had attached in connection with the crime that the interrogation concerned. He relies on *Maine v. Moulton*,[51] in which the Supreme Court held that a state violated the Sixth Amendment by sending a wired informant to gather incriminating statements from a defendant who had been indicted for the subject crime.[52] Critically, the *Moulton* defendant's Sixth Amendment right to counsel had clearly attached, but the police circumvented it by use of an informant.[53] Nevertheless, Jones argues here that the reasoning of *Moulton* means that the state of Texas had an obligation to provide him with counsel during interrogations that concerned crimes for which he was not yet charged because he had previously been arraigned for an unrelated drug offense. That reading of *Moulton*—which appears to side step the offense-specificity of the Sixth Amendment by requiring states to supply counsel during an interrogation concerning *any* crime after a suspect has been charged with *any* crime—lacks support.

This is not to say that Jones's reading of *Moulton* has no validity whatsoever. Contrary to his assertion, the validity of the reading he urges is not before us. Rather, Jones's claim 1a raises the question whether his trial counsel were *ineffective* for failing to have urged his reading in the convicting trial court. Trial counsel cannot be ineffective for failing to assert a novel extension of the reasoning of a Supreme Court case.[54] We find that reasonable jurists could not debate that Jones has no substantial ineffective-assistance

---

[51] 474 U.S. 159 (1985).

[52] *Id.* at 176-77.

[53] *Id.* at 170 ("*Once the right to counsel has attached and been asserted*, the State must of course honor it.") (emphasis added).

[54] *See Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014) ("[C]ounsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts, and failure to raise a novel argument based on admittedly unsettled legal questions does not render his performance constitutionally ineffective. While the Constitution guarantees criminal defendants a competent attorney, it does not insure that defense counsel will recognize and raise every conceivable . . . claim.") (internal quotations and citations omitted).

No. 16-70003

claim based on the failure to raise a Sixth Amendment objection. The district court was inarguably correct that Jones is not entitled to the *Martinez*/*Trevino* exception from his procedural default of claim 1a. Accordingly, we deny a COA on claim 1a.

## IV.

We turn to claim 5. It is undisputed that Jones's September 22 confession to the two unrelated murders taken by the Texas Rangers was taken in violation of *Miranda*.[55] However, the Texas Court of Criminal Appeals held in Jones's direct appeal that the admission of this confession during the punishment phase of the trial, while erroneous, was harmless error beyond a reasonable doubt, two judges dissenting.[56] In the district court, Jones challenged that harmless-error determination as contrary to and an unreasonable application of clearly established Supreme Court precedent. The district court found that it was not, and denied relief on claim 5.

The admission at trial of a confession taken in violation of *Miranda* is subject to harmless-error analysis.[57] But the standard is high: "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[58] We are cognizant that "confessions have profound impact on the jury."[59] Notwithstanding that the confession in question was admitted only during the punishment phase of Jones's trial, we find that jurists of reason could debate whether the state court's application of the Supreme Court's harmless-error test was reasonable. We grant a COA on claim 5.

---

[55] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[56] *Jones*, 119 S.W.3d at 777-83.

[57] *Milton v. Wainwright*, 407 U.S. 371, 372-73 (1972).

[58] *Chapman v. California*, 386 U.S. 18, 24 (1967).

[59] *Bruton v. United States*, 391 U.S. 123, 140 (1968) (White, J., dissenting).

No. 16-70003

We acknowledge the respondent's extensive argument that the AEDPA statute of limitations bars this claim. While that would normally bar a COA if true, our inspection of the record reveals that the respondent may have waived this argument in the district court. However, we do not foreclose the issue; more searching review on a merits appeal may reveal that inclination to be incorrect.

## V.

In sum, we deny a COA on Jones's claim 1a of ineffective assistance of trial counsel for failing to raise a Sixth Amendment objection. We grant a COA on Jones's claim 5 regarding the harmlessness of the admission of a confession obtained in violation of *Miranda*. Further, we deny Jones's motion for reconsideration of our denial of leave to file a separate brief on his § 3599 claim. Jones should brief that claim along with the claim that we grant COA on here.